# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ ) | |
| RONALD S. BOSTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-0980 (ABJ) |
| ) | |
| RELIANCE STANDARD LIFE ) | |
| INSURANCE COMPANY, *et al*., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## <u>MEMORANDUM OPINION</u>

On June 18, 2012, plaintiff Ronald S. Boster brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, to recover benefits he claims are due under an employee short term disability insurance plan ("Plan") established and maintained by his former employer, the Public Company Accounting Oversight Board ("PCAOB"), and issued by Reliance Standard Life Insurance Company ("Reliance"). Compl. [Dkt. # 1] ¶¶ 1, 4–5. Because Reliance has failed to demonstrate that its decision to utilize a new approach in its construction and application of the Plan was the result of a deliberate, principled, and reasonable process, the Court will enter judgment in Boster's favor against the insurer. But the claims against the employer, PCAOB will be dismissed.

Boster's original complaint asserted two causes of action against both defendants: Count I asserted a loss of benefits claim under 29 U.S.C. § 1132(a)(1); and Count II asserted a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(2). Compl. ¶¶ 45–56. On October 3, 2012, PCAOB moved for judgment on the pleadings on both counts under Federal Rule of Civil Procedure 12(c). PCAOB Mot. for J. on the Pldgs. [Dkt. # 12] at 1. On October 23, 2012,

Reliance moved for summary judgment on both counts under Federal Rule of Civil Procedure 56.  Reliance Mot. for Summ. J. [Dkt. # 17] at 3.  While these motions were pending, Boster filed a motion for leave to file an amended complaint.  Pl.'s Mot. for Leave to File Am. Compl. [Dkt. # 26].  The proposed amended complaint revised Count II to assert a breach of fiduciary duty claim against PCAOB under 29 U.S.C. § 1132(a)(3)[1] and added allegations with respect to that claim.  Am. Compl. [Dkt. # 26-1] ¶¶ 6, 11, 18, 20, 56–61.

On April 5, 2013, Boster filed a cross-motion for summary judgment against Reliance. Pl.'s Opp. to Def. Reliance Mot. for Summ. J. and Cross-Mot. for Summ. J. and Mem. in Supp. ("Pl.'s Cross-Mot.") [Dkt. # 33].  Then on April 18, 2013, Boster filed a motion for leave to file a second amended complaint; the proposed second amended complaint added information that Boster learned through discovery and added a new count against PCAOB for interference with the attainment of benefits under 29 U.S.C. § 1140 (Count III).  Pl.'s Mot. for Leave to File 2d Am. Compl. and Mem. in Supp. [Dkt. # 35] at 5–6, 12–13.

With respect to Boster's claims against Reliance, the Court will deny Reliance's motion for summary judgment and grant Boster's cross-motion. Under those circumstances, Boster's motion for leave to file a second amended complaint as to Reliance will be denied as moot. Additionally, the Court will dismiss all of Boster's claims against PCAOB.

- *Count I*:  The Court will grant PCAOB's motion for judgment on the pleadings because Boster has failed to plausibly allege that PCAOB acted as a fiduciary with respect to the benefits determination.  The Court will also deny Boster's motion for leave to file a second amended complaint because the proposed amendments do not cure this deficiency and are thus futile.

---

1    Boster reasserted his breach of fiduciary duty claim under section 1132(a)(3) instead of section 1132(a)(2) because he recognized that "a Section 1132(a)(2) action does not lie because the remedy sought is on behalf of the Plaintiff and not the Plan."  Pl.'s Opp. to PCAOB Mot. for J. on the Pldgs. [Dkt. # 24] at 8.

- *Count II*:  The Court will grant PCAOB's motion for judgment on the pleadings on Count II of the original complaint because Boster has conceded that it failed to state a claim under 29 U.S.C. § 1132(a)(2).  The Court has provided an adequate remedy for Boster's only alleged injury – the loss of his benefits – by granting his motion for summary judgment against Reliance.  Since Boster has failed to allege any separate injury that flowed from PCAOB's alleged breach of its fiduciary duties, he has not pled facts establishing his entitlement to equitable relief under section 1132(a)(3), and the Court will deny Boster's motion for leave to file an amended and second amended complaint to assert a breach of fiduciary duty claim against PCAOB as futile.

- *Count III*:  The Court will deny Boster's motion for leave to file a second amended complaint to add a third count against PCAOB because the proposed second amended complaint does not plausibly allege that PCAOB interfered with Boster's attainment of his rights.

## BACKGROUND

The following facts are undisputed except where noted.[2]

## I.  PCAOB's Short Term and Long Term Disability Insurance Plans

The Public Company Accounting Oversight Board ("PCAOB") is a nonprofit corporation headquartered in the District of Columbia.  Compl. ¶ 5.  PCAOB sponsors a Group Short Term Disability Program ("Plan") for its employees.  *Id.* ¶ 5.  The Plan qualifies as an employee welfare plan under 29 U.S.C. § 1002(1), and is therefore governed by ERISA.  *Id.* ¶ 8.  PCAOB contracted with Reliance Standard Life Insurance Company ("Reliance") to provide the short term disability insurance benefits under the Plan.  *Id.* ¶ 5.  The Plan documents designate PCAOB as the plan administrator and Reliance as the claims fiduciary.  Group Short Term Disability Insurance Program, Ex. A to PCAOB Mot. for J. on the Pldgs. ("Short Term Disability

---

2      The Court will refer to the original complaint unless a particular factual allegation is contained only in the proposed amended or second amended complaint.

Plan") [Dkt. # 12-2] at 24, 35.[3]  As the claims fiduciary, Reliance "has the discretionary authority

to interpret the Plan and the insurance policy and to determine eligibility for benefits.  Decisions

by the claims review fiduciary shall be complete, final and binding on all parties."  *Id.* at 10, 35.

Under the terms of the Plan, an employee may receive a maximum of sixteen weeks of

benefits for one period of disability.  Short Term Disability Plan at 5.  The Plan requires Reliance

to pay short term disability benefits "from the later of the exhaustion of sick leave; or . . . the

eighth consecutive day of disability . . . ."  Short Term Disability Plan at 5; Compl. ¶ 20.

PCAOB does not offer "sick leave" to its employees, though.  Instead, it "provides a Paid Time

Off ('PTO') benefit to use as employees wish:  for vacation, personal or family needs or in case

of sickness."  PCAOB Employment Policies and Procedures Manual, Ex. 2 to Pl.'s Cross-Mot.

[Dkt. # 33-2] at 12; Compl. ¶ 22.

Reliance also provides long term disability benefits to PCAOB employees.  Compl. ¶ 38;

Administrative Record, Ex. to Pl.'s Cross-Mot. ("AR-STD") [Dkt. #s 33-9, 33-10, and 33-11] at

28.  Under the long term disability plan, benefits begin 112 days after the first day of disability.

AR-STD-0028.  The long term disability plan permits Reliance to deduct other income that the

plan participant simultaneously receives – including social security benefits and short term

disability benefits – from the long term disability payment.  *See* AR-STD-0028; Compl. ¶ 38.

---

3       The Court can consider the Plan documents in resolving PCAOB's motion for judgment
on the pleadings because the documents are referred to and quoted in the complaint and are
therefore incorporated by reference in the complaint.  *See, e.g.,* Compl. ¶ 20; *see also EEOC. v.
St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (stating that on a motion
to dismiss, the court may consider "any documents attached to or incorporated in the
complaint."); *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (stating
that on a motion to dismiss, the court may consider "the facts alleged in the complaint,
documents attached as exhibits or incorporated by reference in the complaint, or documents upon
which the plaintiff's complaint necessarily relies even if the document is produced not by the
plaintiff in the complaint but by the defendant in a motion to dismiss.") (internal quotation marks
and citations omitted).

## II.  Boster's Disability Claim

Ronald Boster worked as a Special Advisor to a PCAOB Board Member from January 2003 to September 2010.  Compl. ¶ 7.  He was a participant in the short term and long term disability plans during his tenure at the corporation.  Compl. ¶ 7.  Boster was scheduled for back surgery on September 25, 2010.  Comp. ¶ 11.  He informed his supervisor that he anticipated a short absence from work for the surgery, and his supervisor approved his using paid time off during that absence.  Comp. ¶ 11.  Before the scheduled surgery, Boster became ill, and he underwent emergency surgery on September 11, 2010.  Compl. ¶ 12.  Boster became disabled due to complications from the surgery, and he has remained disabled since then.  Compl. ¶¶ 12–13.  His last day of work was September 10, 2010, and PCAOB charged Boster's absence from work, starting on September 11, to his paid time off.  Compl. ¶¶ 13, 15.  Boster alleges that his wife kept his supervisor apprised of his condition during the period immediately after the surgery.  Compl. ¶ 14.

In mid-October 2010, Boster filed for short term disability benefits.  AR-STD-0121.  The complaint alleges that Boster's wife informed PCAOB that Boster preferred to receive short term disability benefits instead of paid time off.  2d Am. Compl. [Dkt. # 35-1] ¶ 18.  But a PCAOB representative supposedly told Mrs. Boster that PCAOB had a "newly revised STD Plan" that required him to use of six weeks of paid time off before drawing short term disability benefits. 2d Am. Compl. ¶ 33.

On November 1, 2010, Tanya Janish, a human resources associate at PCAOB, sent the paperwork for Boster's short term disability benefits claim by email to Amy Stephens, a claims examiner at Reliance.  Nov. 1, 2010 Email, Ex. 3 to Reliance Mem. in Opp. to Pl.'s Mot. for

Leave to File 2d Am. Compl. [Dkt. # 39-3] at 1.[4]   In the transmittal email, Janish told Stephens that PCAOB had a "new process" for administering the Plan for employees who file for short term disability benefits after they have been out for a while:  "The plan is for the employee to use PTO through the pay period in which they submit the STD paperwork.  The STD period would start after the elim period, but the PTO used that pay period would be counted towards their 16 week balance."  *Id.*  As the PCAOB representative explained it, under the new process, the paid time off received by the employee would offset the short term disability benefits.  *Id.*  That is, the short term disability benefits period would still be sixteen weeks, but Reliance would only pay benefits for the period during which the employee was not receiving paid time off.[5]   The email explained that PCAOB would inform Reliance when the disabled employee stopped receiving paid time off, so that Reliance could begin paying short term disability benefits.  Janish asked Stephens to "hold off" on paying Boster, and stated that she would "tell [Reliance] the date to start payments."  *Id.*

---

4 Reliance has stated that this email exchange occurred on November 4, 2010.  *See* Reliance Mem. in Opp. to Pl.'s Cross-Mot. [Dkt. # 36] at 10.  But the copy of the email that Reliance provided to the Court indicates that the email exchange actually occurred on November 1, 2010.

5 PCAOB and Reliance had previously communicated about the possibility of using paid time off as an offset for short term disability benefits.  In December 2006, Elizabeth Wright, a PCAOB employee, told Jack McGinness, a Reliance salesperson, that PCAOB employees who filed for short term disability after they had been out for a while, received both paid time off and short term disability benefits for their absence.  Ex. 5 to Pl.'s Cross-Motion [Dkt. # 33-6].  She asked if Reliance could solve this problem by "delay[ing] the employees [sic] STD payments until after their PTO ends."  *Id.*  In response, McGinness suggested that they "amend the policy [to] include PTO as an offset – offsetting dollar for dollar for any PTO monies received."  *Id.*  Wright stated that she would discuss the possible amendment with her supervisor.  *Id.*  The Plan was never amended.

Amy Stephens of Reliance immediately rejected PCAOB's proposal; she stated:  "I did speak with [other members of my team] on the change.  I don't agree with the PTO counting towards the 16 week benefit duration.  I don't think we can do that."  *Id.*

On November 3, 2010, Janish at PCAOB spoke with Joseph Meehan, Reliance's regional sales representative, regarding the new process.  AR-STD-0121.  The next day, Janish wrote an email to Reliance's claims team to put the "new process" that she and Meehan discussed "in writing" and to make sure that PCAOB and Reliance were "on the same page."  AR-STD-0121. Under what the email reveals to be the revised version of the proposed new process, employees who filed for short term disability benefits after they had been out for a while would still be required to use their paid time off until the end of the pay period in which they submitted their benefits claims.  *Id.*  The short term disability benefits payments for those employees would then begin the day after the employee stopped receiving paid time off and would continue for the full sixteen weeks; paid time off would not be used to offset the sixteen weeks of benefits.  *Id.*  The long term disability benefits start date would not change based on the employee's use of paid time off; as provided by the contract, it would still begin 112 days after the first day of disability. *Id.*  Thus, under this scenario, the delayed start date for the sixteen weeks of short term disability benefits would overlap with the period in which the employee received long term disability benefits.  AR-STD-0121.  And, pursuant to the long term disability plan, during this overlap period, the long term disability benefits payments would be reduced by the amount of short term disability benefits paid.  *Id.*  Janish asked the Reliance claims team to confirm that her understanding of the new process was correct.  *Id.*  Meehan responded:  "that is exactly how it will work."  *Id.*

In a November 9, 2010 letter, Reliance approved Boster's claim for short term disability benefits.  Compl. ¶ 18.  In the approval letter, Reliance explained that since Boster had elected to use his paid time off through October 31, 2010, his benefits would start on November 1, 2010.  AR-STD-0026; *see also* Compl.¶ 18.  Boster then received short term disability benefits for the sixteen weeks from November 1, 2010 to February 21, 2011.  AR-STD-0002.  Based upon these facts, Reliance assures the Court that Boster has suffered no particular harm, since he received a full sixteen weeks of short term disability benefits.  *See* Reliance Mem. in Supp. of Mot. for Summ. J. [Dkt. # 17-1] at 1.

But that is not where the story ends.  On January 1, 2011, Boster began receiving long term disability benefits to which he was also entitled, and the start date for those payments was not – and could not be – correspondingly delayed.  AR-STD-0028.  So, Boster's sixteen weeks of short term disability benefits payments overlapped with the period in which he was bound to receive his long term disability benefits for approximately seven weeks, from January 1 to February 21, 2011.  Compl. ¶¶ 25–27.  During that overlap period, Reliance deducted the amount of short term disability benefits that Boster was receiving from his long term disability benefits payment.  *See e.g.*, AR-STD-0028.

Boster's claim that under the "new process," he lost six weeks of short term disability benefits, or approximately $18,000, can be illustrated by the following chart:

| Payments Boster would have received under previous Reliance/PCAOB process | Payments Boster actually received |
|---|---|
| Paid time off for 6 weeks (paid by PCAOB) | Paid time off for 6 weeks (paid by PCAOB) |
| **+** Short term disability benefits for 16 weeks (paid by Reliance) | **+** Short term disability benefits for 16 weeks (paid by Reliance) |
| **+** Long term disability benefits (paid by Reliance) | **+** Long term disability benefits <br> **−** *6 weeks of short term disability benefits*[6] (paid by Reliance) |
| **+** Remaining accrued paid time off (paid by PCAOB) | **+** Remaining accrued paid time off (paid by PCAOB) |
| **DIFFERENCE:** | **−  18,055.55** |

Thus, while Reliance's statement that Boster received his full sixteen weeks of short term disability benefits may be technically correct, that does not mean that he incurred no loss due to the delayed start of those payments.  He received less from Reliance than he would have otherwise.[7]  On October 6, 2011, Boster appealed Reliance's decision to start his benefits on November 1, 2010.  AR-STD-0030.  Reliance denied the appeal on November 18, 2011.  AR-STD-0001.

---

[6]     Under the old process, short term disability benefits would start the eighth day of disability and run for sixteen weeks, which means that they would end seventeen weeks after the first day of disability.  Long term disability payments would begin sixteen weeks after the first day of disability so there would be a one week overlap between the payments for short term disability and long term disability.  In Boster's case there was a seven week overlap between the payments for short term disability and long term disability.  So, he lost six weeks of short term disability benefits that he would have received under the old process.

[7]     If Boster received both the 16 weeks of short term benefits and the long term benefits to which he was entitled, in mathematical terms he would have received LTD + STD.  But the amount of the short term benefits was deducted from the long term benefits, which means he received (LTD − STD) + STD.  That equals LTD alone, which is the same as if he didn't receive the short term benefits at all:  (LTD − STD) + STD is the same as LTD + STD − STD, and they both equal only LTD.

### III. Procedural History

On June 18, 2012, Boster filed this suit against PCAOB and Reliance.  The procedural

history is as follows:

- In the original complaint, Boster asserted two claims against both defendants. Count I alleged a loss of benefits claim under 29 U.S.C. § 1132(a)(1) on the grounds that "RELIANCE with the cooperation and participation of Defendant PCAOB, refused to commence benefits until November 1, 2010." Compl. ¶¶ 45–51.  Count II alleged that defendants breached their fiduciary duties and sought a remedy under 29 U.S.C. 1132(a)(2) and (g)(1).  Compl. ¶¶ 52–56.

- On October 3, 2012, PCAOB moved for judgment on the pleadings on both counts.  PCAOB Mot. for J. on the Pldgs. at 1.  Boster opposed PCAOB's motion.  Pl.'s Opp. to PCAOB Mot. for J. on the Pldgs. [Dkt. # 24].

- On October 23, 2012, Reliance moved for summary judgment on both counts. Reliance Mot. for Summ. J. at 3.

- On February 7, 2013, Boster filed a motion for leave to file an amended complaint.  Pl.'s Mot. for Leave to File Am. Compl.  The new complaint revised Count II to assert a cause of action for a breach of fiduciary duty solely against PCAOB under 29 U.S.C. § 1132(a)(3) and added allegations to bolster that claim.  Am. Compl. ¶¶ 6, 11, 18, 20, 56–61.  PCAOB opposed the motion.  PCAOB's Mem. in Opp. to Pl.'s Mot. for Leave to File Am. Compl. [Dkt. # 28].  But Reliance did not.  *See* Pl.'s Mot. for Leave to File Am. Compl. at 1.

- On April 5, 2013, Boster filed an opposition to Reliance's motion for summary judgment and a cross-motion for summary judgment.  Pl.'s Cross-Mot.

- On April 18, 2013, Boster filed a motion for leave to file a second amended complaint.  Pl.'s Mot. for Leave to File 2d Am. Compl.  In the proposed second amended complaint, Boster added information that he learned from discovery and a new claim against PCAOB for interference with his attainment of benefits under 29 U.S.C. § 1140 (Count III).  *See* 2d Am. Compl. ¶¶ 20, 25, 28, 81–86.

The parties' motions are fully briefed and ripe for decision.

**STANDARD OF REVIEW**

**I.   Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings pursuant to Rule 12(c) should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."   *Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 66 (D.D.C. 2001), citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).   Put another way, "[i]f there are allegations in the complaint which, if proved, would provide a basis for recovery[,] the Court cannot grant judgment on the pleadings."   *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008) (alterations in original) (citations and quotation marks omitted).

"The standard of review for such a motion is essentially the same as the standard for a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)."   *Longwood*, 157 F. Supp. 2d at 66–67.   "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:   "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."   556 U.S. at 678.   And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."   *Id*. at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Id*.   A pleading must offer more than

11

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id*.  In evaluating a motion for judgment on the pleadings under Rule 12(c), the court may consider facts alleged in the complaint as well as documents attached to or incorporated by reference in the complaint.  *Qi v. FDIC*, 755 F. Supp. 2d 195, 199–200 (D.D.C. 2010).

## II.  Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  The existence of a factual dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550

U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Washington Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## III. Motion to Amend

When a party seeks to amend its pleading after a responsive pleading has been served, the Court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). When evaluating whether to grant a party's motion for leave to amend its pleading after a responsive pleading has been served, the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint. *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996), quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court may deny leave to amend based on futility "if the proposed claim would not survive a motion to dismiss." *Rumber v. District of Columbia*, 598 F. Supp. 2d 97, 102 (D.D.C. 2009), citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *see also Ross v. DynCorp*, 362 F. Supp. 2d 344, 364 n.11 (D.D.C. 2005) ("While a court is instructed by the Federal Rules of Civil Procedure to grant leave to amend a complaint 'freely,' it need not do so where the only result would be to waste time and judicial resources.

Such is the case where the Court determines, in advance, that the claim that a plaintiff plans to add to his or her complaint must fail, as a matter of law. . . .").

## ANALYSIS

Boster has brought a series of complaints against his previous employer and his insurance company for a single injury, the loss of six weeks' worth of short term disability benefits.  For the reasons discussed below, the Court will allow Boster to recover for his loss of benefits from Reliance and dismiss all of his claims against PCAOB.

## I.  Boster's loss of benefits claim against Reliance

In Count I, Boster alleges that Reliance's refusal to pay him short term disability benefits between September 18, 2010 and October 31, 2010 violated the terms of the Plan, and he seeks to recover those benefits pursuant to 29 U.S.C. § 1132(a)(1).  Compl. ¶¶ 46–47.

A.  The appropriate standard of judicial review for Boster's loss of benefits claim is the deferential standard.

As a threshold matter, the Court must first determine what standard of review applies to the benefits determination in this case.  ERISA provides that a participant in or beneficiary of a covered plan may sue "to recover benefits due to him under the terms of [the] plan, to enforce his rights under the terms of the plan, or to clarify [the] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  The Supreme Court has held that courts should apply a *de novo* standard – instead of the more deferential arbitrary and capricious or abuse of discretion standard – to a benefits determination under ERISA "unless the plan provides to the contrary." *Metro. Life Ins. Co., v. Glenn*, 554 U.S. 105, 111 (2008), citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  A plan provides to the contrary when it grants its "administrator or fiduciary discretionary authority to determine eligibility for benefits." *Id.*, quoting *Firestone*, 489 U.S. at 115 (internal quotation marks omitted).  Under those

14

circumstances, "[t]rust principles make a deferential standard of review appropriate." *Firestone*, 489 U.S. at 111; *cf. Fitts v. Fed. Nat'l Mortgage Ass'n*, 236 F.3d 1, 5 (D.C. Cir. 2001) (deciding when *Firestone*'s exception applies).

The short term disability plan in this case provides:

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

Short Term Disability Plan at 10, 35. Boster acknowledges that this language grants Reliance discretionary authority to interpret the Plan's terms and determine eligibility for benefits. *See* Pl.'s Reply to Reliance's Opp. to Pl.'s Cross-Mot. [Dkt. # 38] at 4, 6. Nonetheless, he argues that "[s]ince the actual decision on the STD Benefit Start Date was made by PCAOB, which was given no discretionary authority under the terms of the Plan, Reliance Standard's compliance with [PCAOB's] demand is due no discretion whatsoever." Pl.'s Cross-Mot. at 11. Therefore, according to Boster, this Court should review the benefits determination in this case *de novo*. *Id.*

Boster points to a series of emails between PCAOB and Reliance representatives in November 2010 to support his claim that PCAOB made the decision regarding the start date of his short term disability benefits. On November 1, 2010, Tanya Janish, a PCAOB human resources associate, wrote the following email to Amy Stephens, a Reliance claims examiner:

> Please see attached the STD paperwork for Ron Boster. . . .
>
> **PLEASE DO NOT PAY UNTIL I FOLLOW UP. SEE MESSAGE BELOW:**
>
> Also, has anyone discussed our new process for STD? We spoke with Joe and Joyce a couple of weeks ago about something that was changed in how we administer the plan for employees who come to us after they have been out for some time. The plan is for the employee to use PTO through the pay period in which they submit the STD paperwork. The STD period

would start after the elim period, but the PTO used that pay period would be counted towards their 16 week balance. This means that I would tell you the date to start payments from Reliance.  I am sending now because I wanted you to be able to get started collecting the paperwork from the physician, but please hold off on the payment. We are discussing the new process and how we are handling. I will let you know the date to start payment when I know.

Nov. 1, 2010 Email at 1.[8]   Under this "new process," the number of weeks of short term disability benefits paid would be reduced by the number of weeks of paid time off that the employee received, and the benefits payments would start after the employee stopped receiving paid time off.  *Id.*

Less than fifteen minutes later, the Reliance claims examiner responded:  "I did speak with Joe and Joyce on the change.  I don't agree with the PTO counting towards the 16 week benefit duration.  I don't think we can do that."  *Id.*  This response undermines Boster's assertion that PCAOB hijacked Reliance's discretionary authority to determine eligibility for benefits and that Reliance "merely complied with PCAOB's direction."  *See* Pl.'s Reply to Reliance's Opp. to Pl.'s Cross-Mot. at 4.  Instead, it demonstrates that when PCAOB proposed to interpret the Plan in a way that Reliance believed was incorrect – *i.e.* that the sixteen week benefits period could be reduced based on an employee's use of paid time off – Reliance rejected the suggestion and insisted on applying the Plan based on its own understanding.[9]

---

8    Boster has alleged that this message was followed by an email dated November 4, 2010 from Joseph Meehan, a Reliance employee, to Janish and Stephens, which stated:  "Tanya, I have spoke [sic] with Amy and we agree this is exactly how it will work."  Pl.'s Cross-Mot. at 6. This is incorrect.  The email from Meehan was in response to a November 4, 2010 PCAOB email that is discussed below.  *See* AR-STD-0121 [Dkt. # 33-10].

9    Boster also contends that statements from the PCAOB email such as "I would tell you the date to start payments from Reliance . . ." demonstrate that PCAOB made the decision regarding the start date of Boster's short term disability benefits.  Pl.'s Reply at 17.  But as the Court has stated, Reliance rejected PCAOB's proposal and insisted on applying the Plan according to its interpretation of the terms.  Moreover, those statements only reflect PCAOB's intention to inform Reliance of the operative dates so that Reliance could make its benefits determination.

After further conversation with a Reliance employee, the PCAOB human resources associate wrote another email to Reliance's claims benefits team to confirm how she then understood short term disability benefit payments would work:

> I wanted to put in writing the process Joe and I discussed yesterday to make sure that we are all on the same page. Please confirm that you agree with the process below based on the example of Ron Boster (I provided Amy with his paperwork Monday this week): Ron's first day unable to work was 9/13. Ron did not inform us of his leave until 10/22, and Ron provided paperwork after he had been paid through 10/31. Ron is expected to use PTO through 10/31, and if we were to provide Reliance with a pay through date of 10/31 the STD period and payments would start effective 11/1/10. Ron's 16 week STD period would run from 11/1/10 through 2/20/11. In determining the long term disability elimination period the 112 days would begin on 9/20/2010 and end on 1/9/11. Effective 1/10/11 Ron would continue to receive STD and start to receive LTD payments (the long term disability payments would be offset by the short term disability payment). He would receive STD and LTD payments through the end of the short term disability period on 2/20/11. On 2/21/11, short term disability payments would stop and long term disability would continue if he remains eligible. To recap: The STD begins after the PTO period ends +1 day (11/1/10 in Ron's case), and the PTO period includes the 7 day elimination period. The LTD elimination period does not change and begins on the 113th day. Since STD begins after the PTO period ends this causes an overlap with regard to the LTD elimination period. Please confirm that my understanding based on the information above is correct.

AR-STD-0121. In this email, the PCAOB representative expressed her understanding that Boster would receive the full sixteen weeks of benefits permitted under the Plan, which further reflects that it was the insurer's interpretation that was implemented. Further, the fact that the PCAOB representative repeatedly asked the Reliance claims team to confirm her understanding of the process shows that PCAOB was deferring to Reliance's authority. Reliance confirmed PCAOB's revised understanding and replied: "this is exactly how it will work." *Id.*

The November 2010 email exchanges demonstrate that Reliance did not acquiesce to PCAOB's interpretation of the Plan. Rather, Reliance maintained its discretionary authority to interpret the Plan, corrected PCAOB's misunderstanding of the Plan's terms, and made the

benefits determination based on its own interpretation.  Indeed, the record shows that Reliance did not adhere to the payment schedule that PCAOB established in the November 4, 2010 email. For example, it started Boster's long term disability payments on January 1, 2011 instead of January 9, 2011.  Since Reliance maintained and exercised its discretionary authority under the Plan, the Court will apply the deferential standard of review to the benefits determination in this case.

The cases that Boster cites to support his position that the *de novo* standard should apply are distinguishable.  In *Fitts v. Fed. Nat'l Mortgage Assoc.*, the D.C. Circuit applied the *de novo* standard because the plan did not expressly give the insurer or the employer discretionary authority to determine benefits eligibility.  236 F.3d 1, 5–6 (D.C. Cir. 2001).  In the remaining cases, the court applied the *de novo* standard because the benefits determination had been made by someone other than the person with discretionary authority to do so under the plan.  *See Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 583–84 (1st Cir. 1993); *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 291 (11th Cir. 1989); *Crider v. Highmark Life Ins.*, 458 F. Supp.2d 487, 501–03 (W.D. Mich. 2006); *cf Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 229 (2d Cir. 1995) (remanding to the district court to make the factual determination as to who actually made the benefits determination).  These cases do not alter the Court's conclusion because here, the Plan expressly gave Reliance discretionary authority to make benefits determinations, Short Term Disability Plan at 10, 35, and Reliance exercised that authority.

B. The Court will deny Reliance's motion for summary judgment and grant Boster's cross-motion because Reliance's construction and application of the Plan did not result from a deliberate, principled, and reasonable process.

When evaluating a benefits determination under the deferential standard,[10] the critical inquiry is:  did the insurance company "reasonably construe and apply" the plan?  *Block v. Pitney Bowes Inc.*, 952 F.2d 1450, 1454 (D.C. Cir. 1992).  This means a court cannot overturn a decision that is reasonable, "even if an alternative decision also could have been considered reasonable."  *Block*, 952 F.2d at 1452 (internal quotation marks omitted); *Mobley v. Cont'l Cas. Co.*, 405 F. Supp. 2d 42, 48 (D.D.C. 2005) ("[A] deferential standard of review allows the plan administrator to reach a conclusion that may technically be incorrect so long as it is reasonably supported by the administrative record.").  The administrator's decision should therefore not be overturned if it is the result of a "deliberate, principled, reasonable process and if it is supported by substantial evidence," meaning it must be "more than a scintilla but less than preponderance." *Buford v. UNUM Life Ins. Co. of Am.*, 290 F. Supp. 2d 92, 100 (D.D.C. 2003) (internal quotation marks and citations omitted).

In determining whether a fiduciary's construction of a plan is reasonable, the Court should also consider:  (1) whether the interpretation is contrary to the language of the plan; (2) whether it is consistent with the specific provision's purpose; and (3) whether it is consistent with prior similar interpretations and whether the participants had notice of the fiduciary's interpretation.  *Costantino v. Washington Post Multi-Option Benefits Plan*, 404 F. Supp. 2d 31,

---

10      The standard to be applied in cases where a fiduciary has been given discretionary authority has been "variously described by the [Supreme] Court as 'arbitrary and capricious' or 'abuse of discretion,' but regardless of how it is phrased, the standard to be applied 'is plainly deferential.'"   *James v. Int'l Painters and Allied Trades Indus. Pension Plan*, 710 F. Supp. 2d 16, 23 (D.D.C. 2010), quoting *Wagener v. SBC Pension Benefit Plan–Non–Bargained Program*, 407 F.3d 395, 402 (D.C. Cir. 2005); *see also Block v. Pitney Bowes Inc.*, 952 F.2d 1450, 1454 (D.C. Cir. 1992) ("The distinction, if any, between 'arbitrary and capricious review' and review for 'abuse of discretion' is subtle. . . . we are satisfied, there is no need to adopt one phrase and avoid the other.").

42 (D.D.C. 2005). The Court's review of a benefits determination "may only be based on the record available to the administrator or fiduciary at the time the decision was made." *Crummett v. Metro. Life Ins. Co.*, No. 06-01450, 2007 WL 2071704, at *3 (D.D.C. July 16, 2007), citing *Block*, 952 F.2d at 1455. Here, while the challenged determination can be seen as consistent with the purpose of the operative provision of the Plan, it does not fit neatly with the plain language of the Plan. More important to the decision here, the determination was inconsistent with prior interpretations of the Plan, the determination was rendered without any notice to the employees of the change, and the record does not reflect that the determination was the result of a deliberate process.

 1. *Reliance's benefits determination was consistent with the purpose of the "exhaustion of sick leave" provision.*

 While the language of the policy in question in this case is clear, it is not entirely clear how it should apply in this situation. The short term disability policy provides:

> **DAY BENEFITS BEGINS:**  Benefits, for one period of disability, will be paid as follows:
>
> > **INJURY AND SICKNESS:**  We will pay benefits from the later of *the exhaustion of sick leave*; or
> >
> > (1)  the first day of disability if due to Injury; or
> >
> > (2) The eighth consecutive day of disability if due to Sickness.

Short Term Disability Plan at 5 (emphasis added).

 There is something of a misalignment though, between the Plan and the employer whose employees are covered by the Plan. Although the Plan refers to "the exhaustion of sick leave," PCAOB does not actually offer "sick leave" to its employees. Rather, it offers paid time off, which is accrued leave that employees can use "for vacation, personal or family needs *or* in case of sickness." PCAOB Employment Policies and Procedures Manual at 12 (emphasis added).

Reliance asserts that it "reasonably and correctly interpreted the phrase 'sick leave' to include PTO that is used when an employee misses work due to sickness," and therefore, its decision to begin payment of Boster's short term disability benefits after he had used his paid time off as sick leave was also reasonable.  Reliance Opp. to Pl.'s Cross-Mot. at 5; Reliance Mot. for Summ. J. at 8.  Sick leave is "[a]n employment benefit allowing a worker time off for sickness," Black's Law Dictionary 1506 (9th ed. 2009), and here, PCAOB allowed employees to use paid time off for sickness.  Therefore, it was not unreasonable to consider this time off to be "sick leave."

A court could find that Reliance's determination that a plan participant could not simultaneously receive his employer's version of "sick leave" and short term disability benefits is consistent with the purpose of the "exhaustion of sick leave" provision.  The provision in the Plan that calls for short term disability benefits payments to begin after "the exhaustion of sick leave" can be read as expressing the contracting parties intention that a plan participant should not be entitled to receive both "sick leave" and short term disability benefits at the same time.  *See* Short Term Disability Plan at 5.  This interpretation is support by the PCAOB's internal employment policies and procedures manual, which states:

> STD benefits work in conjunction with Paid Time Off (PTO).  Employees may use PTO during the STD waiting period, which is the first seven calendar days of a covered disability, illness or injury.  Upon completion of the applicable waiting period, employees who are eligible may choose to utilize STD benefits.  However, employees with adequate PTO balances may choose to use PTO for all or part of an eligible absence. . . .  To initiate STD benefits, employees must notify Human Resources of their inability to work . . . employees who fail to notify Human Resources may risk using more PTO than intended.

PCAOB Employment Manual at 17–18.  This language suggests that the employer contemplated that employees would be required to choose between the two methods of compensation, and that PCAOB employees would not be entitled to receive both paid time off and short term disability

benefits for the same period of time.   After the completion of the seven day waiting period,

PCAOB employees "may choose to utilize STD benefits" or they "may choose to use PTO for all

or part of an eligible absence."   *Id.*   The manual further informs employees that if they fail to

notify human resources of their inability to work, they might receive paid time off for their

absence instead of short term disability benefits.   *Id.*

But while Reliance's reading of the Plan may not be unreasonable as an abstract

proposition, that is not where this Court's inquiry ends.   Boster's complaint stems in large part

from the fact that Reliance never applied this interpretation to PCAOB's employees before.

2. *Although Reliance's benefits determination accords with the spirit of the "exhaustion of sick leave" provision, the Court will overturn the decision because it is inconsistent with the way Reliance previously applied the Plan, it fails to give meaning to the term "exhaustion," and the record does not reflect the necessary deliberative process.*

In support of his motion, Boster provides the Court with evidence revealing that PCAOB

and Reliance previously grappled with the disconnect between the Plan and PCAOB's leave

polices.   In December 2006, Elizabeth Wright, a PCAOB employee, contacted Jack McGinness,

a Reliance salesperson, regarding the implementation of the short term disability benefits

program.   Ex. 5 to Pl.'s Cross-Motion [Dkt. # 33-6].   Wright informed McGinness that PCAOB

employees generally filed for short term disability after they had been out of work for a while,

and that sometimes they filed after the cutoff date for the payroll cycle.   *Id.*   In these situations,

the employees received both paid time off and short term disability benefits for their absence.   *Id.*

Wright explained that "it is very hard to get the employees to pay any monies they have received

back to PCAOB," and she wondered if Reliance could solve this problem by "delay[ing] the

employees [sic] STD payments until after their PTO ends."   *Id.*   In response, McGinness

suggested that they "amend the policy [to] include PTO as an offset – offsetting dollar for dollar

for any PTO monies received." *Id.* Wright stated that she would discuss the possible amendment with her manager. *Id.*

This email exchange shows that in December 2006, Reliance did not interpret the Plan to require delay of short term disability benefits after an employee's use of paid time off; in fact, Reliance was then paying short term disability benefits while employees were still receiving paid time off. When PCAOB proposed delaying the start date of those benefits, Reliance did not inform PCAOB that such a delay was already permitted under the terms of the Plan. Instead, Reliance proposed solving the overlap issue by amending the policy to authorize an offset. This amendment was never accomplished, and the issue persisted.

PCAOB raised the overlap issue again four years later. In a November 1, 2010 email, a PCAOB representative informed a Reliance claims examiner about a new process for administering the Plan. Nov. 1, 2010 Email. She proposed that they implement the offset that had never been written into the policy: under the new process, employees who filed for short term disability benefits after they had been absent for a while would have to continue to use their paid time off through the end of the pay period in which they filed their claim, the short term disability benefits period would commence after the seven day elimination period, and the amount of short term disability benefits paid would be reduced by the amount of paid time off received. Nov. 1, 2010 Email; *see also* AR-STD-0121 (referring to the "7 day elimination period" for short term disability benefits). The Plan language remained unchanged, though, so, Reliance responded and explained that paid time off could not be used to reduce or offset the sixteen week benefit duration period. Nov. 1, 2010 Email. Notably, even under PCAOB's proposed "new process," the short term disability benefits period was still scheduled to begin after the seven day elimination period and *not* after the employee ceased relying upon paid time

off.  Nov. 1, 2010 Email.  Reliance did not address the proposed start date – which accorded with the way that it had previously construed and applied the Plan – in its response to PCAOB; the email was focused on the unavailability of the offset option.

The documents provided to the Court suggest that further conversation among the parties ensued, and a PCAOB representative wrote to Reliance to confirm what they had discussed.  At that point, and for the first time, Reliance endorsed a different construction of the Plan.  In a November 4, 2010 email, Reliance agreed, for the first time, that "STD begins after the PTO period ends + 1 day."  AR-STD-0121.[11]  It then confirmed that the last day that an employee received paid time off for the disability would be considered the end of the paid time off period for purposes of triggering the start of the short term disability benefits.  AR-STD-0121–22.  But this construction cannot be harmonized with the language of the policy.  As Boster notes, the Plan does not authorize Reliance to wait to pay benefits until some point after an employee had received some portion of some form of sick leave from his employer; it states that benefits may begin after "the exhaustion of sick leave."  Pl.'s Cross-Mot. at 16; Short Term Plan at 5.

Reliance contends that "the policy was applied as written and intended, such that when Plaintiff exhausted his compensable sick leave the STD benefits began."  Reliance Opp. to Pl.'s Cross-Mot. at 8.  But this contention is contrary to the literal definition of the term "exhaustion." *See Donovan v. Carlough*, 576 F. Supp. 245, 249–50 (D.D.C. 1983) (reversing the fiduciary's interpretation and application of the Plan because it was contrary to the literal definition the Plan's terms).  Indeed, Reliance's interpretation ignores the concept of exhaustion entirely.

---

11     This agreement appeared to be based on discussions between representatives from PCAOB and Reliance the day before.  AR-STD-0121.  But the November 4 email does not provide any information as to how the parties arrived at this interpretation of the Plan.

To exhaust is to deplete or to use up completely.  *See* Merriam-Webster Dictionary, available at http://www.merriam-webster.com/dictionary/exhaust (last accessed Aug. 8, 2013).  Paid time off is "one 'bucket' of leave" that consolidates multiple types of leave such as paid vacation, sick, and personal days into a single plan.  Reliance Mot. for Summ. J. at 7.  Under such a system, the entirety of an employee's accrued paid time off could constitute "sick leave" because he could choose to use all of that time to cover an absence based on sickness.  Here, Boster had 188 hours of paid time off remaining as of October 31, 2010.  Pl.'s Cross-Mot. at 5.  So, if paid time off is synonymous with sick leave under the Plan, it had not yet been exhausted on the date Reliance initiated short term disability benefits.

Reliance's construction would prompt a host of practical problems.  PCAOB's employment manual does not state whether an employee has to inform the company of the reason for his use of paid time off.  So how would the exhaustion requirement apply in a situation where an employee uses paid time off while on vacation, becomes disabled during that vacation and then files for short term disability 30 days after that disability?  Would an employee who became temporarily disabled be required to exhaust all of his paid time off before drawing short term disability benefits, thereby leaving himself with no vacation, no family leave, and no accrued paid time off if he were fortunate enough to recover and return to work?

Reliance does not address any of these issues in the administrative record or in its briefings in this case.  In response to Boster's argument that he did not exhaust his sick leave as of October 31, 2010, Reliance merely states that it is Boster's burden "to prove that he did not exhaust his PTO, a burden he cannot satisfy."  Reliance Opp. to Pl.'s Cross-Mot. at 8–9.

Contrary to this assertion, Boster does not have to prove that he "did not exhaust his PTO."[12]
The question is whether Boster exhausted his employer's version of sick leave.  This confusion
indicates that Reliance has not wrestled with or considered how the exhaustion provision applies
in conjunction with PCAOB's leave policy.

More importantly, the email provided no explanation for why Reliance suddenly began to
interpret the term "exhaustion of sick leave" as the day that an employee stops receiving paid
time off for the disability.  In fact, the November 4 email is entirely devoid of any discussion
about the need to consider PCAOB's paid time off as sick leave or the term "exhaustion" and
how it applies in a situation where the company only offers paid time off.   In the absence of any
reasoning and analysis, and the lack of any record of a decision-making process beyond a
reference in an email to a telephone call with PCAOB, the Court cannot make the necessary
finding that the decision in Boster's case was based on a deliberate and principled process.  That
conclusion is compounded by the fact that the new interpretation was applied to Boster for the
first time although there had never been notice to employees of the change.  *See Donovan*, 576 F.
Supp. at 251 (holding that the fiduciary's benefits determination was not reasonable in part
because it never gave the plan participants notice of its interpretation of the Plan).

The main problem in this case is that Reliance's short term disability plan was not well-
suited to PCAOB's personnel policies.  Reliance and PCAOB were aware of this problem at least

---

12      Moreover, Boster has already demonstrated that he had 188 hours of paid time off as of
October 31, 2010, so he had not exhausted his paid time off as of that date.  *See* Pl.'s Cross-Mot.
at 5.

as of December 2006, but they did not take the appropriate next step:  to amend the policy.[13]

Faced with the same problem four years later, it was unreasonable to simply change the rules on

Boster.   Therefore, the Court will deny Reliance's motion for summary judgment and grant

Boster's cross-motion.[14]   The Court will also deny Boster's motion to file a second amended

complaint as to Reliance as moot in light of its ruling on the parties' cross-motions for summary

judgment.

## II.  Boster's claims against PCAOB

In his original complaint, Boster asserted two claims against PCAOB:  Count I for loss of

benefits; and Count II for breach of fiduciary duty.   In his proposed amended complaint, Boster

sought to revise Count II to state a claim against just PCAOB and add information to bolster that

claim.   In his proposed second amended complaint, Boster added information gleaned from

discovery and added a new claim for interference with the attainment of his rights against

PCAOB (Count III).   The Court will grant PCAOB's motion for judgment on the pleadings on

the original complaint and deny Boster's motions to file an amended and a second amended

complaint as futile.

---

13    Reliance argues that the fact that the amendment was never made is irrelevant here
because this case involves the start date of benefits and not "an offset or reduction of the STD
benefit amount based on a claimant's receipt of sick time."   Reliance Opp. to Pl.'s Cross-Mot. at
8.   The Court's decision to overturn the benefits determination is not based on the parties' failure
to amend the Plan, but the point is that the Plan needed fixing, and any new construction had to
be accompanied by reasoning, explanation, and notice.

14    Since the Court is granting Boster's cross-motion for summary judgment, it need not
address Boster's other arguments including that Reliance failed to state any notice of appeal
rights as required by ERISA in its November 9, 2010 adverse determination letter, or that it had a
conflict of interest that affected its benefits determination.

A. Count I:  Loss of benefits claim

1. *The Court will grant PCAOB's motion for judgment on the pleadings as to Count I of the original complaint because PCAOB was not a fiduciary with respect to the benefits determination.*

Count I alleges that PCAOB is liable for Boster's loss of benefits because PCAOB cooperated with and participated in Reliance's decision to delay benefits until November 1, 2010.  Compl. ¶ 46.  Under ERISA, a "person is a fiduciary with respect to a plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  But "[f]iduciary status under § 1002(21)(A) is not an 'all or nothing concept. . . .   [A] court must ask whether a person is a fiduciary with respect to the particular activity in question.'"  *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994), quoting *Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214 (8th Cir. 1993); *see also American Fed'n of Unions Local 102 v. Equitable Life Assurance Soc'y*, 841 F.2d 658, 662 (5th Cir. 1988) ("A person is a fiduciary only with respect to those portions of a plan over which he exercises discretionary authority or control.").

A benefit plan may provide "for allocating fiduciary responsibilities . . . among named fiduciaries."  29 U.S.C. § 1105(c)(1).  "If named fiduciaries of a plan allocate responsibilities in accordance with a procedure for such allocation set forth in the plan, a named fiduciary will not be liable for acts and omissions of other named fiduciaries in carrying out fiduciary responsibilities which have been allocated to them, except" in limited circumstances that are inapplicable here.  29 C.F.R. § 2509.75–8, FR-13; *see also* 29 U.S.C.  § 1105(c)(2).

In *Hunter v. Metro. Life Ins. Co.*, 251 F. Supp. 2d 107, 113 (D.D.C. 2003), the court held that an employer who was also the plan sponsor and administrator could not be held liable for an insurer's decision to deny the plaintiff benefits because the plan explicitly gave the insurer discretionary authority to determine a claimant's entitlement to benefits, and there was "no

indication in the record that [the employer] had any discretion or played any role in the determination of plaintiff's claim."   Based on that conclusion, the court granted the employer's motion for summary judgment.   *Id.*   The D.C. Circuit summarily upheld the district court's decision on the grounds that:   (1) the plaintiff "failed to establish a genuine issue of material fact as to whether [the employer] acted as a fiduciary with respect to the denial of appellant's claim for disability benefits"; (2) "district court properly concluded that, absent exceptions that do not apply here, the plan's delegation of fiduciary responsibilities to [the insurer] shields [the employer] from liability for [the insurer's] alleged breach"; and (3) "there [were] no genuine issues of material fact to suggest that [the employer] exercised fiduciary responsibility in denying appellant's benefit claim."   *Hunter v. Metro. Life Ins. Co.*, No. 03-7050, 2003 WL 22240321, at *1 (D.C. Cir. Sept. 24, 2003) (per curiam) (*Hunter II*).

Boster argues that PCAOB is liable for his loss of benefits because PCAOB was acting in its fiduciary capacity as the plan administrator when it "conveyed misleading information to Reliance which adversely affected the benefits paid to Boster," namely that he was receiving paid time off through October 31, 2010.  Pl.'s Opp. at 5–7.[15]  But under *Hunter II*, the relevant inquiry is not whether PCAOB was acting in a fiduciary capacity when it sent the employment information but whether PCAOB "acted as a fiduciary *with respect to* the denial of [Boster's] claim for disability benefits."   *Hunter II*, 2003 WL 22240321, at *1 (emphasis added).   As in *Hunter*, here, the Plan provides that Reliance is "the claims review fiduciary with . . . the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits."   Short Term Disability Plan at 10, 35.   PCAOB's provision of information to Reliance regarding Boster's use of paid time off does not give rise to liability for loss of benefits

---

15    This information was not "misleading" because Boster has acknowledged that he received paid time off through October 31, 2010.  Compl. ¶ 16.

under 29 U.S.C. § 1132(a)(1) because it does not alter the fact that Reliance was the claims fiduciary with sole discretion to use that information in a benefits determination. Since the original complaint fails to plausibly allege that PCAOB had or exercised fiduciary responsibility in denying Boster's benefit claim, PCAOB cannot be held liable for his loss of benefits, and the Court will grant PCAOB's motion for judgment on the pleadings on Count I of the original complaint. *See Hunter II*, 2003 WL 22240321, at *1.

> 2. *The Court will deny Boster's motion for leave to file a second amended complaint as to Count I because the proposed amendments are futile.*[16]

"Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). With respect to Count I, the major difference between the proposed second amended complaint and the prior complaints is that it includes information that Boster uncovered during discovery, namely the content of the November 2010 emails. The Court may rely on these emails when determining whether the proposed second amended complaint would survive a motion to dismiss because the emails are cited and quoted throughout the complaint and are therefore incorporated by reference in the complaint. *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted).

In the November 1, 2010 email, PCAOB proposed instituting a "new process" for how it "administer[ed]" the Plan for certain employees, and Reliance informed PCAOB that the procedure would not comport with the Plan. Nov. 1, 2010 Email. As the Court has already concluded, this email exchange demonstrates that Reliance maintained and exercised its discretionary authority to interpret the Plan and determine benefits eligibility. *See supra* § I(A).

---

16     The additional allegations in the amended complaint are relevant to the breach of fiduciary duty claim against PCAOB. Pl.'s Mot. for Leave to File Am. Compl. at 2. Since the amended complaint does not seek to revise or add allegations relevant to Count I, the Court will deny it as futile as to Count I.

Therefore, those emails do not alter the Court's analysis under *Hunter* because they do not demonstrate that PCAOB exercised fiduciary responsibility with respect to the benefits determination.   *See* 2003 WL 22240321, at *1.   Accordingly, the Court will deny Boster's motion to file a second amended complaint as futile as to Count I.

B.   Count II:  Breach of fiduciary duty claim

1.   *The Court will grant PCAOB's motion for judgment on the pleadings on Count II of the original complaint because Boster has conceded that count did not state a claim.*

Count II of the original complaint asserted a cause of action for breach of fiduciary duty against both defendants and sought a remedy under 29 U.S.C. § 1132(a)(2).   Compl. ¶ 56. Subsequently, Boster withdrew this claim, conceding that "a Section 1132(a)(2) action does not lie because the remedy sought is on behalf of the Plaintiff and not the Plan."   Pl.'s Opp. to PCAOB Mot. for J. on the Pldgs. at 8.   Therefore, the Court will grant PCAOB's motion for judgment on the pleadings on Count II of the original complaint as conceded.

2.   *The Court will deny Boster's motions to file an amended and a second amended complaint with respect to Count II as futile.*

Boster then sought to file an amended and second amended complaint to assert a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3) solely against PCAOB.   *See* Am. Compl. ¶¶ 56–61; 2d. Am. Compl. ¶¶ 74–80.   Section 1132(a)(3) allows plan beneficiaries to bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."   29 U.S.C. § 1132(a)(3).   This section is a "catchall provision" that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere remedy."   *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).   But "where Congress elsewhere provided adequate relief for a

31

beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"  *Id.* at 515, quoting 29 U.S.C. § 1132(a)(3).

The D.C. Circuit has not decided whether a plaintiff may simultaneously pursue a claim for denial of benefits under section 1132(a)(1)(B) and a claim for breach of fiduciary duty under section 1132(a)(3).   However, "[c]ourts in this Circuit have generally followed the view of the majority of circuits that a breach of fiduciary claim under § 1132(a)(3) cannot stand when a plaintiff has an adequate remedy for her injuries under § 1132(a)(1)(B)."  *Zalduondo v. Aetna Life Ins. Co.*, 845 F. Supp. 2d 146, 155 (D.D.C. 2012); *see also Clark v. Feder, Semo & Bard, P.C.*, 808 F. Supp. 2d 219, 226 (D.D.C. 2011) (holding that a plaintiff "may proceed only under § 1132(a)(1)(B) or § 1132(a)(3), not under both provisions"); *Kifafi v. Hilton Hotels Ret. Plan*, 616 F. Supp. 2d 7, 39 (D.D.C. 2009) (dismissing the plaintiff's breach of fiduciary duties claim on the grounds that "a plan participant cannot proceed with a breach of fiduciary duty claim under Section 502(a)(3) when relief is available under other remedial sections of ERISA").[17] However, a plan participant may simultaneously bring claims under sections 1132(a)(1)(B) and 1132(a)(3) when section 1132(a)(1)(B) does not provide an adequate and complete remedy for the participant's injuries.  *See England v. Marriott Int'l*, 764 F. Supp. 2d 761, 780 (D. Md. 2011) (allowing the plaintiff to pursue claims under both section 1132(a)(1)(B) and 1132(a)(3) because the remedy sought under section 1132(a)(3) – the reformation of the terms of the benefit awards – was not available under section 1132(a)(1)(B)).

---

17      "[T]he majority of circuits that have decided this issue have held that a breach of fiduciary duty claim cannot stand where a plaintiff has an adequate remedy through a claim for benefits under § 1132(a)(1)(B)."  *Clark*, 808 F. Supp. 2d at 225, citing *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 107 (4th Cir. 2006); *Antolik v. Saks, Inc.*, 463 F.3d 796, 803 (8th Cir. 2006); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998).

Boster argues that his breach of fiduciary duty claim is "not a repackaged denial of benefits [claim] because it is, at least in part, based upon different facts." Pl.'s Mot. for Leave to File Am. Compl. at 6. Specifically, he argues that PCAOB breached its fiduciary duty when it falsely told his wife that it had a "revised Plan requiring 6 weeks use of leave before STD." Pl.'s Mot. for Leave to File Am. Compl. at 6; Am. Compl. ¶ 20; 2d. Am. Compl ¶ 33. But the determination of whether equitable relief is appropriate is not based on whether the equitable claim arises out of "different facts." Instead, the court must determine whether "Congress elsewhere provided adequate relief for a beneficiary's *injury*." *Varity*, 516 U.S. at 515 (emphasis added).

The gravamen of Boster's complaints is that "[a]s a direct and proximate consequence of the conduct of the Defendants, the Plaintiff has suffered and will continue to suffer loss of STD disability benefits amounting to thousands of dollars." 2d Am. Compl. ¶¶ 66, 73; *see also* Am. Compl. ¶¶ 48, 55. This is the only injury that Boster has alleged; he has not alleged a separate injury that he suffered as a result of PCAOB's alleged false statement to his wife. The Court has provided an adequate remedy for Boster's loss of benefits by granting his motion for summary judgment against Reliance. *See supra* § I(B). Any further equitable relief would be inappropriate.[18] *See Varity*, 516 U.S. at 515; *see also Zalduondo*, 845 F. Supp. 2d at 154–55 (denying the plaintiff's motion to amend her complaint to assert a claim for breach of fiduciary

---

18      Boster has requested "such additional equitable and legal relief as may be necessary and proper." 2d Am. Compl. ¶ E. He argues that as equitable relief for PCAOB's alleged breach of its fiduciary duty, the Court could order PCAOB to pay a surcharge and attorneys' fees and costs or order injunctive relief. Pl.'s Opp. to PCAOB's Mot. for J. on the Pldgs. at 10. The Court has provided an adequate remedy for Boster's loss of benefits and attorneys' fees are already provided for under section 1132(a)(1). Further, Boster has not provided any support for his argument that the Court should also order PCAOB to pay a surcharge nor has he sought any specific form of injunctive relief.

duty against the ERISA plan administrator under section 1132(a)(3) as futile because she had an adequate legal remedy against the insurer under section 1132(a)(1)(B)).

C.  Count III:  Interference with the attainment of rights

The second amended complaint seeks to add a claim against PCAOB for interference with the attainment of rights in violation of 29 U.S.C. § 1140.  2d Am. Compl. ¶¶ 81–86. Section 1140 of ERISA provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.  The elements of a cause of action under section 1140 are:  "(1) prohibited employer conduct; (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled."  *May v. Shuttle, Inc.*, 129 F.3d 165, 169 (D.C. Cir. 1997), citing *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 922 (3d. Cir. 1990).

Boster contends that in violation of section 1140, "PCAOB discriminated against the Plaintiff in directing a 'new process' aimed specifically and solely at Plaintiff, and intentionally interfered with Plaintiff's attainment of rights under the terms of the Plan."  2d Am. Compl. ¶ 65; *see also id.* ¶ 83 ("PCAOB discriminated against Plaintiff for the purpose of interfering with Plaintiff's rights to his STD benefits.").  In the November 1, 2010 email, PCAOB discussed a "new process" for short term disability benefits:  "has anyone discussed our new process for STD? We spoke with Joe and Joyce a couple of weeks ago about something that was changed in how we administer the plan for *employees* who come to us after *they* have been out for some time."  AR-STD-0120 (emphasis added); *see* 2d Am. Compl. ¶ 20.  Four days later, PCAOB sent another email to Reliance stating:  "[T]o make sure that we are all on the same page.  Please

34

confirm that you agree with the process below based on the *example* of Ron Boster . . . ."   AR-STD-0121 (emphasis added); *see* 2d Am. Compl. ¶ 25.

Contrary to Boster's assertions, these email exchanges do not "clearly reflect that the 'new process' was established for Boster's claim in November 2010."   *See* Pl.'s Reply to PCAOB's Opp. to Mot. to file 2d Am. Compl. at 6.   First, the discussion regarding the "new process" started weeks before PCAOB sent Boster's claims paperwork to Reliance.   Second, the use of the plural – "employees" and "they" – indicate that the new process was intended to apply broadly to all employees who fit the criteria.   The November 4, 2010 email confirms this interpretation and shows that PCAOB outlined how the new process would apply in Boster's case as an "example" to ensure that Reliance and PCAOB were "on the same page."   *See* AR-STD-0121.

In an attempt to avoid this conclusion, Boster submits that PCAOB's "new process" was discriminatory because it was not applied to any prior employee.   2d Am. Compl. ¶ 31.   This argument is unconvincing:  as Boster acknowledges, this process was "new," so the fact that had not been applied to anyone in the past does not suggest discrimination.   Notably, Boster has not alleged or presented any evidence to demonstrate that this "new process" has not been applied to anyone else who met the criteria since it was established in November 2010.   Since Boster has provided no factual support for his allegation that PCAOB discriminated against him in violation

of section 1140, Count III would not survive a motion to dismiss, and the Court will deny

Boster's motion for leave to file a second amended complaint to add that claim as futile.[19]

## CONCLUSION

For the reasons stated above, the Court will:

- deny Reliance's motion for summary judgment and grant Boster's cross-motion;

- grant PCAOB's motion for judgment on the pleadings;

- deny Boster's motion for leave to file an amended complaint as futile; and

- deny Boster's motion for leave to file a second amended complaint as moot as to Reliance and futile as to PCAOB.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  August 8, 2013

---

19      PCAOB and Boster also disagree as to whether section 1150 applies only to actions that impact a plaintiff's employment.  *See* PCAOB's Opp. to Mot. to File 2d Am. Compl. at 6–7 (contending that section 1150 only applies to employer actions that affect the employer-employee relationship); Pl.'s Reply to PCAOB's Opp. to Mot. to File 2d Am. Compl. at 2–4 (alleging that in the D.C. Circuit, to state a claim under section 1150, an individual plan participant need only plausibly allege that he or she was targeted for discriminatory action as compared to other participants).  The Court will not address this issue because Boster has failed to factually allege that PCAOB took any discriminatory actions against him.